UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES LANGONE, as FUND MANAGER of the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND<br><br>      Plaintiff,<br><br>v.<br><br>PYTKO CONSTRUCTION CORP.<br><br>      Defendant, | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 04cv12001NMG<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF CHARLES LANGONE

I, Charles Langone, under oath and based on my personal knowledge, hereby depose and state the following:

1. I am the Fund Manager for the New England Teamsters & Trucking Industry Pension Fund (hereinafter "Pension Fund" or "Fund"). I have been the Fund Manager since October 1990. The Pension Fund has its principal place of business at One Wall Street, 4th Floor, Burlington, MA 01803-4768.

2. The Fund is a defined benefit multi-employer pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

3. The Fund was established for the purpose of receiving pension contributions and providing pension benefits to eligible employees pursuant to an Agreement and Declaration of Trust dated April 11, 1958 ("the Trust Agreement"), which has been amended from time to time. A true and correct copy of the Trust Agreement is attached as Exhibit 1.

4. Contributions are paid to the Fund at an hourly rate determined by collective bargaining agreements between contributing employers and local Teamster unions participating in the Fund. Contributions are paid on behalf of employees for each hour of employment "covered" by these collective bargaining agreements.

5. In the performance of my duties, I have personal knowledge of those documents governing the administration of the Fund including, but not limited to, the Trust Agreement, the Pension Plan, collective bargaining agreements between contributing employers and Local Teamster Unions as well as interpretative guidelines and policies set forth by the Fund's Board of Trustees regarding Plan administration.

6. As Fund Manager, I am responsible for the day-to-day administration of the Fund and the maintenance and oversight of all Fund records. Specifically, I ensure that contributions from contributing employers to the Fund are properly processed, that pension credit of Fund participants is accurately calculated and that pension benefits are paid in compliance with the Fund's Trust Agreement and Pension Plan, and in accordance with the directions, policies and procedures of the Fund's Board of Trustees.

7. Defendant Pytko is an employer obligated to make contributions to the Fund pursuant to its agreement with Teamsters Local Union No. 251 entitled the Rhode Island Heavy Construction and Ready Mix Agreement. Pytko has been a contributing employer to the Fund since 1995.

8. Defendant Pytko is also signatory to the Fund's Standard Participation Agreement that sets forth the manner in which contributions must be paid to the Fund, a true and correct copy of which has been attached hereto as Exhibit 2.

9. The standard participation agreement requires employers to make contributions to the Fund on the twentieth day of the month following the month in which employment is performed. Remittance reports indicating the hours of service for each employee performing covered employment are prepared by employers and submitted to the Fund on a monthly basis. Contributions covered that are not timely paid are subject to late charges at a rate determined by the Internal Revenue Code §6621 as set forth in the Trust Agreement.

10. Between July 2002 and December 2004, the Defendant failed to make timely payment of contributions to the Fund and has accumulated late charges totaling $260.05.

11. Defendant has not made contribution payments to the Fund for the months of January 2005 to date. Based upon the summary submitted to Fund counsel (see Campbell Affidavit), contributions for these months total $7,084.37. Contributions for the month of June 2005 have not been reported to the Fund and have been estimated based upon an average of six months of contributions paid prior to the January delinquency. These contributions are reported to the Fund by the employer but may be subject to a payroll audit by the Fund at a future date.

12. In accordance with Section 29 U.S.C. §1132(g)(2) and the Trust Agreement, the Defendant owes to the Fund the following:

a. Delinquent contributions in the amount of $7,084.37 for the period of January through June 2005 and accumulated late charges in the amount of $260.05 for a total of $7,344.42.

b. Interest has accrued on the contribution for the months of January through June 2005 in the amount of $93.15 (The Section 6621 rate was 5% from January through March 2005 and 6% from April 2005 to date).

c. An amount equal to the greater of either the amount of interest (i.e. $93.15) or liquidated damages of twenty percent (20%) of the principal ($1,468.88). Consequently, Plaintiff is entitled to $1,468.88.

d. Reasonable attorneys fees and costs in the amount of $2,914.50.

13. Based on the foregoing, the Defendant owes the Fund a total of $11,820.95.


Dated: July 22, 2005                /S/ Charles Langone
                                    Charles Langone, Fund Manager

# APPENDIX "A"

# STANDARD PARTICIPATION AGREEMENT

1. The undersigned Employer and Local Union certify that the following provision is a part of their collective bargaining agreement regarding pension or retirement benefits and contributions for all employees performing work within the scope of and/or covered by the collective bargaining agreement between the Employer and the Local Union, and in the event of any conflict between these provisions and other provisions of such collective bargaining agreement, the terms and conditions set forth below shall prevail with respect to pension contributions and coverage:

SECTION _____, PENSIONS

(a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement.

(b) Commencing with the _21st_ day of _March_, 19_55_, and for the duration of the current collective bargaining agreement between Local Union _251_ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement, as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, the Employer shall make a contribution of $ _2.66_ to the New England Teamsters and Trucking Industry Pension Fund but not more than $ _X_ per week for any one employee from the first hour of employment in such week.

Commencing with the _1st_ day of _May_, 19_55_, the said hourly contribution rate shall be $ _2.86_ but not more than $ _X_ per week for any one employee, and commencing with the _1st_ day of _May_, 19_56_, the said hourly contribution rate shall be $ _3.11_ but not more than $ _X_ per week for any one employee.

For purposes of this section, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week, whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

If a regular employee (as defined in the collective bargaining agreement) is absent because of illness or off-the-job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks, for forty (40) hours per week. If an employee is injured on the job, the Employer shall continue to pay the required contributions at the rate of forty (40) hours for each such week until the employee returns to work; however, such contributions of forty (40) hours shall not be paid for a period of more than twelve (12) months.

(c) The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust dated April 11, 1958 and accepts such Agreement and Declaration of Trust, as amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(d) The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking Industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(e) It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions, such audit may, at the option of the Trustees, be conducted by an independent certified public accountant or a certified public accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Fund have been under-reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer

shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish in their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration if such is provided in this Agreement.

It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

(f) No oral or written modification of this section regarding pensions and retirement shall be made by the Local Union or the Employer, and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this section or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

2. The parties agree that this Standard Participation Agreement shall be considered a part of the collective bargaining agreement between the Local Union and the Employer, and that no other agreement between the Employer and the Local Union regarding pensions or retirement is in effect or will be effective during the period covered by the collective bargaining agreement.

3. The expiration date of the present collective bargaining agreement between the Employer and the Local Union is _____APRIL 30____, 19_97_. Copies of any renewal or extension agreements shall be furnished promptly to the Pension Fund, and if not consistent with the Standard Participation Agreement and/or Mandatory Contract Language or both required by the Trustees, such non-conformity may be used by the Trustees as a basis for the termination of the participation of the Employer as a contributing employer to the Fund.

FOR THE LOCAL UNION:                     FOR THE EMPLOYER:

_Teamsters Local 251_                    _Pytkoes Tocco Construction Corp_
Name & Number                            Name of Employer

By _[signature]_                         By _Stetter J. Tocco_
                                            Its duly authorized Agent
                                            _State of R.I._
Pres. + B.A.                             For _Cumberland, R.I._
                                            (Location of Terminal)

※ All hours worked with a maximum of 2070 hours each calendar year. _JM_



RECEIVED APR 20 1995 — New England Teamsters & Trucking Industry Pension Fund

13

# New England Teamsters and Trucking Industry Pension Fund

**RESTATED AGREEMENT & DECLARATION OF TRUST**

Reprinted and Restated as of January 26, 1994

# RESTATED AGREEMENT AND DECLARATION OF TRUST

## New England Teamsters and Trucking Industry Pension Fund

This original Agreement and Declaration of Trust was made and entered into as of the eleventh day of April, 1958 in the City of Waterbury, State of Connecticut, by and between various Employers who were or are presently parties to this Agreement, hereinafter referred to as "Employers," and the various local unions and such other local unions who were or are presently parties to this agreement, hereinafter referred to as the "Unions."

### WITNESSETH THAT:

WHEREAS, various employers and Unions affiliated with the International Brotherhood of Teamsters have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a pension fund and prescribe the contributions or payments to be made by the Employers to such fund, and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a pension fund as a trust fund for receiving contributions and providing benefits for eligible employees, and

WHEREAS, the said trust fund is to be known as the NEW ENGLAND TEAMSTERS AND TRUCKING INDUSTRY PENSION FUND, and

WHEREAS, it is desired to set forth the terms and conditions under which the said fund is to be established and administered, and

WHEREAS, it is mutually agreed that the fund shall be administered by trustees and it is desired to define the powers and duties of the trustees and the nature of the benefits to be provided, and

WHEREAS, with the enactment of the Employee Retirement Income Security Act of 1974 and the Multiemployer Pension Plan Amendments Act of 1980, and as further amended, the Trustees of said Fund deem it advisable to revise and update the terms of said Trust Agreement and also to restate the terms of said Agreement and Declaration of Trust in a single document, including all amendments to date.

NOW, THEREFORE, in consideration of the premises, it is mutually understood and agreed as follows:

## ARTICLE I
## DEFINITIONS

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

Section 1. EMPLOYER. The term "Employer" as used herein shall mean, and is limited to, each person or organization which is now a party to or hereinafter becomes a party to the New England Freight Agreement which requires periodic contributions to the Pension Fund created by this Trust Agreement, and which adopts and agrees in writing to be bound by the party to the New England Freight Agreement and also shall mean and include any other person or organization which shall enter into a Collective Bargaining Agreement with a Local Union bound by the terms and provisions of this Trust Agreement, provided the inclusion of any such person or organization does not affect the actuarial soundness of the Pension Plan as determined by the Trustees upon recommendation by the actuaries for the Pension Fund.

The term "Employer" shall also include for its respective full time salaried employees, each Local Union, Joint Council, Teamster affiliated Credit Unions, Teamster affiliated Health and Insurance Plans or Welfare Funds, the New England Teamsters and Trucking Industry Pension Fund, and any association or organization of employers composed of contributing employers to this Fund, however named or described, including but not limited to the Northeast Employers' Association, Inc. and any other related or affiliated group or entity which the Board of Trustees may hereinafter approve for participation.

Section 2. EMPLOYEE. An "Employee" shall be any person covered by a collective bargaining agreement between an Employer and a Local Union and any full time salaried employee of an employer as defined in Section 1, 2nd paragraph herein.

Section 3. INTERNATIONAL UNION. The term "International Union" as used herein shall mean the International Brotherhood of Teamsters.

Section 4. LOCAL UNION OR UNIONS. The terms "Local Union" or "Unions" as used herein shall mean any local union affiliated with the International Union which is a party to the New England Freight Agreement and to this Trust Agreement and any other local union affiliated with the International Union which is accepted by the Trustees as a party to this Trust Agreement which then becomes a party to this Trust Agreement.

## ARTICLE I, cont.
## DEFINITIONS

Section 5. TRUSTEES.

(a) The term "Employer Trustees" as used herein shall mean the Trustees appointed by the Employer subject to this Agreement and Declaration of Trust.

(b) The term "Union Trustees" as used herein shall mean the Trustees appointed by the Local Unions provided such Trustees are duly-elected officers and/or Business Agents of one of the signatory Local Unions.

(c) The term "Trustees" as used herein shall mean the Employer Trustees and Union Trustees collectively, and shall include their successors when acting as Trustees.

Section 6. AGREEMENT AND DECLARATION OF TRUST OR TRUST AGREEMENT. The term "Agreement and Declaration of Trust" or "Trust Agreement" as used herein shall mean this instrument including any amendments hereto and modifications hereof.

Section 7. PLAN. The term "Plan" as used herein shall mean the program of pension and retirement benefits to be established by the Trustees pursuant to this Trust Agreement.

Section 8. FUND. The term "Fund" as used herein shall mean the New England Teamsters and Trucking Industry Pension Fund, the trust fund created pursuant to this Trust Agreement, and shall mean generally the monies or other things of value which comprise the corpus and additions to the trust fund.

Section 9. CONTRIBUTIONS. The term "Contributions" as used herein shall mean the payments paid or payable to the Fund by the Employers.

Section 10. BENEFITS. The term "Benefits" shall mean the pension benefits to be provided pursuant to the Plan.

Section 11. COLLECTIVE BARGAINING AGREEMENT. The term "Collective Bargaining Agreement" as used herein shall mean a collective bargaining agreement in force and effect between a Local Union and an Employer, together with any modifications or amendments thereto, which provides for contributions to be made to the Fund created by this Trust Agreement and includes the New England Freight Agreement, and any renewal, modification, amendment thereof or successor agreement thereto.

Section 12. NEW ENGLAND FREIGHT AGREEMENT. The term "New England Freight Agreement" as used herein shall mean a collective bargaining agreement entered into by the signatory Employers and the Local Unions which, as the effective date hereof, is designated as "New England Freight Amendment 1958-1961" or any renewal or extension thereof including a document designated or described as the New England Supplemental Freight Agreement.

Section 13. HEALTH AND INSURANCE FUND. The term "Health and Insurance Fund" as used herein shall mean any trust fund established pursuant to a labor agreement with a Local Union which provides health and insurance benefits under a written plan to eligible employees and employers. Each such trust fund first must be accepted by the Trustees as a "Health and Insurance Fund" and become a party to this Trust Agreement in the form and manner prescribed by the Trustees. This term shall also include similar trust funds known and described as Welfare Funds.

## ARTICLE II
## GENERAL

Section 1. ESTABLISHMENT OF FUNDS. As hereby created, the New England Teamsters and Trucking Industry Pension Fund shall comprise the entire assets derived from Employer contributions made to or for the account of this Fund under collective bargaining agreements, together with any and all investments made and held by the Trustees, or monies received by the Trustees as contributions or as income from investments made and held by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Trust Agreement.

Section 2. GENERAL PURPOSE. The Fund shall be a trust fund and shall be used for the purpose of providing pension and retirement benefits, as decided by the Trustees, through self-insurance or otherwise, and shall further provide the means for the payment of the expenses of the Trustees and the establishment, operation and administration of the Fund, in accordance with this Trust Agreement, and administering the affairs of the Fund including, but without limitation, the expenses which may be incurred in connection with the establishment and maintenance of the Fund, the employment of administrative, legal, expert and actuarial services, the leasing or purchase of such premises and such materials, supplies and equipment as the Trustees in their discretion find necessary in the performance of their duties.

## ARTICLE III
### TRUSTEES

Section 1. TRUSTEES, EMPLOYER AND UNION TRUSTEES. The operation and administration of the Pension Fund shall be the joint responsibility of four (4) trustees appointed by the Employers and four (4) trustees appointed by the Local Unions, and at all times there shall be an equal number of Employer and Union Trustees. The original Trustees were:

(a) Employer Trustees
Harold F. Bergeron of Easton, Massachusetts, Philander Cooke of Wallingford, Connecticut, John J. Lane of Chevy Chase, Maryland, and John H. Welch of Arlington, Massachusetts.

(b) Union Trustees
Timothy M. Collins of Trumbull, Connecticut, Alexander J. Hylek of Cranston, Rhode Island, William J. McCarthy of Arlington, Massachusetts, and Fred J. Roberto of Fairfield, Connecticut.

Section 2. ACCEPTANCE OF TRUSTEESHIP. The Trustees, or any duly appointed successor Trustee, shall immediately meet and sign this Agreement and Declaration of Trust which establishes the Pension Fund. The Trustees by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in their capacities strictly in accordance with the provisions of this Agreement and Declaration of Trust.

Section 3. TERM OF TRUSTEES. Each Trustee above named, and each Successor Trustee, shall continue to serve as such until his death, incapacity, resignation or inability to serve because of termination of employment with an Employer or Union as required by Article I, Section 5.

Section 4. VACANCIES. If the term of a Trustee is terminated as hereinabove provided, his successor Trustee shall be appointed in the following manner, subject to the requirements of Article 1, Section 5.

(a) If such Trustee is an Employer Trustee, his successor shall be appointed by the Northeast Employers' Association, Inc. or its successor organization.

(b) If such Trustee is a Union Trustee, his successor shall be appointed by a majority vote of the remaining Union Trustees, and provided further, that there shall be at all times at least one Trustee from each of the states of Connecticut and Massachusetts, and said Trustees shall at all times be duly elected officers or Business Agents of a signatory Local Union.

Section 5. FORM OF NOTIFICATION. In case any Trustee shall be succeeded, a statement in writing by the Chairman designated by the Employer Trustees and filed with the Fund at its principal office shall be sufficient evidence of the action taken by the Employers and a statement in writing signed by the Chairman designated by the Union Trustees and filed with the Fund at its principal office shall be deemed sufficient evidence of the action taken by the Unions. Any resignation by a Trustee shall be by written notification delivered to the principal office of the Fund.

Section 6. SUCCESSOR TRUSTEES. Any Successor Trustee shall immediately upon his designation as Successor Trustee and his acceptance in writing filed with the Trustees become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any entity appointed pursuant to Article IV, Section 3 of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV
### POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

Section 1. PROPERTY AND ASSISTANCE. The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, clerical and other assistants or employees, including former Trustees, as in their discretion they may find necessary or appropriate in the performance of their duties.

Section 2. CONSTRUCTION OF AGREEMENT. The Trustees shall have power to construe, with discretionary authority, the provisions of this Trust Agreement, or the Plan adopted hereunder, and the terms thereof, and any construction adopted by the Trustees in good faith shall be binding upon the Unions, the Employers and the Employees and their families, dependents, beneficiaries and/or legal representatives.

Section 3. GENERAL POWERS. The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) To establish and administer a Pension Plan on behalf of the Employees and their beneficiaries referred to in this instrument or the Plan established hereunder.

(b) To enter and administer a Pension Plan on behalf of the Employees and their beneficiaries referred to in this instrument or the Plan established hereunder.

(c) To compromise, settle, arbitrate, and release claims or demands in favor of or against the Trust Fund or the Trustees on such terms and conditions as the Trustees may deem advisable.

## ARTICLE IV, cont.
## POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

(d) To establish and accumulate as part of the Trust Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purposes of such Trust.

(e) To pay out of the Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof.

(f) To make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund.

(g) To receive contributions or payments from any source whatsoever to the extent permitted by law.

(h) To invest and reinvest the Pension Fund in any type of investments, including real estate and interests in real estate, which are deemed proper and reasonable under the prudent man investment rule and to take any and all action with respect to holding, buying, selling or maintaining such investments as the Trustees, in their sole discretion, may deem appropriate.

(i) To engage investment counselors or advisors, corporate trustees and corporate agents in such capacity and under which terms as are acceptable to the Trustees.

(j) To reconcile, determine, interpret and construe, with discretionary authority, any question or dispute arising in connection with definitions of terms, rights, status or classification of employees, or any other dispute or claim arising under the Plan including, but not limited to, the determination of the entitlement of any person to any pension or retirement benefits, or the existence, extent, cause and continuance of any person's claims to any disability or other benefits.

(k) To establish an escrow bank account or accounts to the extent deemed necessary in their discretion.

(l) To do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish the general objective of enabling the employees to obtain pension benefits in the most efficient and economical manner, and for the protection of the property held hereunder.

(m) To hold and manage such real estate and real estate interests in the name of a trust, corporation, or nominee, with or without a power of attorney for its transfer, as the Trustees may deem appropriate under the circumstances.

Section 4. COMPENSATION. The Union and Employer Trustees shall not receive compensation from the Fund for the performance of their duties.

Section 5. AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other pension plans to which Local Unions affiliated with the International Brotherhood of Teamsters are parties to permit such other pension funds to join or merge with this Fund.

Section 6. PERSONAL LIABILITY. Neither the Trustees nor any individual or successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with the first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder; provided, however, that nothing herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties so long as they act in good faith and without gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts of omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers or the Local Unions shall be in any way liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Fund's legal counsel and shall be fully protected in acting upon such advice of counsel to the Fund as respects legal questions.

Section 7. BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be available upon reasonable notice for inspection by signatories to this agreement at the principal office of the Fund.

Section 8. EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations, or associations, may rely thereon that such notice of instrument has been duly authorized and is binding on the Fund and the Trustees.

Section 9. DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. Except as hereinafter provided, no check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee.

The Employer Trustee shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustee shall likewise designate in writing the name or names of the Union Trustees who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for such purpose.

Section 10. SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Trust Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Fund.

Section 11. REPORTS TO EMPLOYERS AND UNIONS. The Trustees may, in their discretion at any time and from time to time, but not less frequently than once each year, render written accounts of their transactions in such form as they deem appropriate and shall file the same with the Employers and Unions. Each such Employer and Union and the Employees and their beneficiaries involved shall be deemed to have approved any such account unless it or they shall file with the Trustees written objections thereto within sixty days after receipt of such account, and in the absence of such objection, the Trustees shall be released, relieved and discharged with respect to all matters and things set forth in such account as though the same had been settled by the decree of a court of competent jurisdiction.

## ARTICLE V
## CONTRIBUTIONS TO THE FUND

Section 1. RATE OF CONTRIBUTIONS. In order to effectuate the purposes hereof, each Employer shall contribute to the Fund the amount required by the Collective Bargaining Agreement between the Local Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modifications thereto. For this purpose, those Employees of Employers, as defined in Article I, Section 1, 2nd paragraph herein, as amended, other than those who are covered by a collective bargaining agreement, shall have contributions paid on their behalf by said entities on account of their said full time salaried employees at the same rate as required for Employers subject to the applicable provisions of the New England Supplemental Freight Agreement.

Section 2. EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Local Union or until he ceases to be an Employer within the meaning of this Trust Agreement as hereinafter provided. In addition to all sums due to the Fund by an Employer under the terms of the applicable Collective Bargaining Agreement, as aforesaid, an Employer shall also be obligated to contribute to the Fund, all sums due as a result of a legal duty established and provided by applicable labor-management relations law, including 29 U.S.C. 158(a)(5).

Section 3. MODE OF PAYMENT. All contributions shall be payable to the Fund and shall be paid in the manner and form determined by the Trustees. The detailed basis of such payment is more specifically set forth in the Standard Form of Participation Agreement, hereto attached as Appendix "A". The failure of a participating Employer to execute a Standard Form of Participation Agreement shall not excuse it from its obligations to the Fund, under its collective bargaining agreement or this Trust Agreement.

Section 4. DEFAULT IN PAYMENT. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of its obligation to make payments. In accordance with Sec. 502(g)(2) of Employee Retirement Income Security Act of 1974, as amended, the Trustees do establish the rate of interest to be paid by employers on delinquent contributions to be the rate prescribed under Sec. 6621 of the Internal Revenue Code of 1954; and further, liquidated damages shall be assessed in an amount of 20% of the amount of the delinquency, or such higher percentage as may be permitted under Federal or State law, plus reasonable attorneys' fees and costs of the action.

The Trustees may take any legal action necessary to enforce payment of the contributions due hereunder including, but not limited to, proceedings at law and in equity.

Section 5. REPORT ON CONTRIBUTIONS. The Employers shall make remittance reports on contributions required by the Trustees. The Trustees may at any time have an audit made of the payroll and wage records of any Employer in connection with the said contributions and/or reports.

Section 6. PAYROLL AUDIT. The Trustees may audit an Employer's payroll and employment records regardless of whether at the time he is a current contributing Employer.

Section 7. REFUND OF CONTRIBUTIONS. Recognizing the need to protect the Fund from receipt of payment of contributions on behalf of ineligible persons, and also to protect the Fund from unjustified and detrimental delay by employers who are seeking refunds, it is hereby declared and determined that no refund of a contribution shall be made or considered unless application in writing has been received by the Fund office within one year after the payment of the contribution which is sought to be returned.

Nothing in this provision shall preclude the refund of contributions beyond said one year limitation should the Trustees determine that said contributions were paid in good faith and under a mistake of fact or law.

## ARTICLE VI
## PLAN OF BENEFITS

Section 1. BENEFITS. The Trustees shall have full authority and discretion to determine all questions of the nature, amount and duration of benefits to be provided based on what it is estimated that Fund can provide without undue depletion or excessive accumulation, provided, however, that no benefits other than pension or retirement benefits may be provided for or paid under this Trust Agreement.

Section 2. RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any Employee (or his beneficiaries or dependents) of a contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Local Union or any other document requiring contributions to the Fund.

Section 3. ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full discretionary authority to determine and interpret eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries and dependents.

Section 4. METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

Section 5. WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Trust Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications as the Trustees from time to time in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

Section 6. APPROVAL OF PLAN. The Pension Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as a qualified plan, so as to insure that the employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to take any action and take whatever applications are necessary to the Internal Revenue Service in order to receive and maintain approval of the Pension Plan as a qualified plan.

Section 7. EMPLOYER'S LIABILITY. The financial liability of a contributing employer to the Fund shall be determined by the applicable collective bargaining agreement and the terms and provisions of all applicable laws including the Employee Retirement Income Security Act of 1974 and the Multiemployer Pension Plan Amendments Act of 1980, as amended.

## ARTICLE VII
## MEETINGS AND DECISIONS OF TRUSTEES

Section 1. OFFICERS OF TRUSTEES. The Trustees shall meet as promptly as possible after the execution of this Trust Agreement and the Employer and Union Trustees shall each elect a Chairman for their group who shall serve as Co-Chairmen for the Fund. The Co-Chairmen shall continue in office until replaced by the Employer or Union Trustees, respectively.

Section 2. MEETINGS OF TRUSTEES. Meetings of the Trustees shall be held at such place or places as may be determined by either Co-Chairman and may be called by either Co-Chairman upon ten (10) days' written notice to the other Trustees and may be held at any time without such notice if all the Trustees consent thereto in writing. Meetings shall be held at least annually.

Section 3. ACTION BY TRUSTEES WITHOUT MEETING. Action by the Trustees may also be taken by them in writing without a meeting, provided, however, that in such cases there shall be unanimous written concurrence by all of the Trustees.

Section 4. QUORUM.

(a) In all meetings of the Trustees, three (3) Employer Trustees and three (3) Union Trustees shall constitute a quorum for the transacting of business. In the event one of the Trustees of a group is absent, then the remaining three Trustees of that group shall each have 1 1/3 votes.

(b) Should there fail to be a quorum at a duly called meeting of the Trustees, then the action taken at said meeting may only be validated and affirmed if said action in its entirety is approved by those Trustees in attendance and thereafter in writing is approved by all of the absent Trustees on or before the next regular meeting.

Section 5. MAJORITY VOTE OF TRUSTEES. All action by the Trustees shall be by majority decision of the Employer and Union Trustees. Such majority vote shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees. In the event any matter presented for decision cannot be decided because of a tie vote or because of the lack of a quorum at two consecutive meetings, the matter may then be submitted to arbitration as hereinafter provided.

Section 6. MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

## ARTICLE VIII
### IMPARTIAL ARBITRATOR

Section 1. APPLICATION OF THIS ARTICLE. Either the Employer or Union Trustees may apply to a district judge in the federal district court in the area in which the Fund maintains as its situs for the designation of an arbitrator who will decide any disputes among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VII, Section 5. The decisions of the arbitrator shall be final and binding.

Section 2. EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceeding, including the fee, if any, of the impartial arbitrator, shall be proper charge against the Fund and the Trustees are authorized to pay such charges.

## ARTICLE IX
### EXECUTION OF TRUST AGREEMENT

Section 1. COUNTERPARTS. This Trust Agreement may be executed in one or more counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

Section 2. WRITTEN INSTRUMENTS. An Employer may adopt and become a party of this Trust Agreement by executing a counterpart hereof or by executing any other written instrument where he agrees to participate in the Fund pursuant to the terms of this Trust Agreement.

## ARTICLE X
### AMENDMENT TO TRUST AGREEMENT

Section 1. AMENDMENT BY TRUSTEES. This Trust Agreement may be amended by affirmative votes of at least three Union Trustees and three Employer Trustees in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees and annexed hereto. As to any amendment, the Trustees in their sole discretion shall have full power to fix the effective date thereof. Notice of the proposed amendment shall be given at the time the notice of meeting is given, unless waived by all Trustees.

Section 2. LIMITATION OF RIGHT TO AMENDMENT. No amendment may be adopted which will be in conflict with a Collective Bargaining Agreement with Local Unions or be contrary to the laws governing trust funds of this nature.

Section 3. NOTIFICATION OF AMENDMENT. Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall notify all necessary parties and shall execute any instruments if necessary in connection therewith.

## ARTICLE XI
### TERMINATION OF TRUST

Section 1. BY THE TRUSTEES. This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between any Employer and any Local Union requiring contributions to the Fund.

Section 2. PROCEDURE ON TERMINATION. In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus in such manners as will in their opinion best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefit of the employees, their families, beneficiaries, or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund. Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any contributing Employer or Local Union.

Section 3. NOTIFICATION OF TERMINATION. Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and each Employer and also all other necessary parties, and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust. The Trustees shall also give such notice as is lawfully required by them, including notice to the Pension Benefit Guaranty Corporation and any other notice required by the Employee Retirement Income Security Act of 1974, as amended.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

Section 1. TERMINATION OF INDIVIDUAL EMPLOYERS. An Employer shall cease to be an Employer within the meaning of this Trust Agreement when it is no longer obligated, pursuant to a Collective Bargaining Agreement with a Local Union, to make contributions to the Fund, or, as determined in the sole discretion of the Trustees, when he is delinquent in his contributions or reports to the Fund.

Section 2. VESTED RIGHTS. No employee or any person claiming by or through such employee, including his family, dependents, beneficiary and/or legal representative, shall have any right, title or interest in or to the Fund or any property of the Fund or any part thereof except as may be specifically determined by the Trustees.

Section 3. ENCUMBRANCE OF BENEFITS. No monies, property or equity, of any nature whatsoever, in the Fund, or policies or benefits or monies payable therefrom, shall be subject in any manner by any Employee or person claiming through such employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

Section 4. SITUS. All questions pertaining to validity, construction and administration shall be determined in accordance with the laws of the Commonwealth of Massachusetts.

Section 5. CONSTRUCTION OF TERMS. Wherever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine or neuter gender in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 6. CERTIFICATION OF TRUSTEES' ACTIONS. The Co-Chairmen may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Fund or with the Trustees shall be fully protected in reliance placed on such duly executed document.

Section 7. NOTIFICATION TO TRUSTEES. Each Trustee shall notify the Fund Manager and the Co-Chairmen of his home and business address and telephone numbers. Any changes of said address and numbers shall be effected by written notice from the Trustee to the Fund Manager and Co-Chairmen.

Section 8. SEVERABILITY. Should any provision in this Trust Agreement or in the Plan or rules and regulations adopted thereunder or in any collective bargaining agreement be deemed or held to be unlawful or invalid for any reason, such fact shall adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 9. TRANSFER OF FUNDS. If any employee or group of employees or all employees represented by one or more Local Unions shall cease to be covered by the Fund for any reason whatsoever, they shall not be entitled to receive any assets of the Fund or portion thereof, nor shall the Trustees be authorized to make any transfer of assets on behalf of such employees, except and to the extent as they may be so required under any applicable law of the United States.

Section 10. TRUSTEES' COMPLIANCE WITH LAW. The Trustees shall manage the assets of the Trust and conduct the business of the Fund in accordance with the Employee Retirement Income Security Act of 1974, as amended. It is the express intention of the Trustees that this Agreement and Declaration of Trust be applied and interpreted so as to be in full compliance with all applicable provisions of law, including the Employee Retirement Income Security Act of 1974, as amended.

IN WITNESS WHEREOF, the undersigned duly appointed Trustees do cause this Restated Agreement and Declaration of Trust to be approved, executed and effective this 26th day of January, 1994.

| UNION TRUSTEES | EMPLOYER TRUSTEES |
|---|---|
| _____ Ernest R. Tusino, Co-Chairman | _____ J. Leo Barry, Co-Chairman |
| _____ David W. Laughton | _____ John J. McCarthy, Jr. |
| _____ Paul V. Walsh | _____ John R. West |
| _____ Anthony S. Buonpane | _____ William M. Vaughn, III |

APPENDIX "A"
STANDARD PARTICIPATION AGREEMENT

1. The undersigned Employer and Local Union certify that the following provision is a part of their collective bargaining agreement regarding pension or retirement benefits and contributions for all employees performing work within the scope of and/or covered by the collective bargaining agreement between Employer and the Local Union, and in the event of any conflict between these provisions and other provisions of such collective bargaining agreement, the terms and conditions set forth below shall prevail with respect to pension contributions and coverage:

**PENSIONS**

(a) This Pension Article shall supersede and prevail over any other inconsistent provisions or articles contained within this agreement or the parties' collective bargaining agreement.

(b) Commencing with the ____ day of _____, 19 ____, and for the duration of the current collective bargaining agreement between Local Union _____ and the Employer, and any renewals or extensions thereof, the Employer agrees to make payments to the New England Teamsters and Trucking Industry Pension Fund for each and every employee performing work within the scope of and/or covered by this collective bargaining agreement, whether such employee is a regular, probationary, temporary or casual employee, irrespective of his status as a member or non-member of the Local Union, from the first hour of employment subject to this collective bargaining agreement, as follows:

For each hour or portion thereof, figured to the nearest quarter hour for which an employee receives pay or for which pay is due, the Employer shall make a contribution of $_____ to the New England Teamsters and Trucking Industry Pension Fund but not more than $_____ per week for any one employee from the first hour of employment in such week.

Commencing with the ____ day of _____, 19 ____, the said hourly contribution rate shall be $_____ but not more than $_____ per week for any one employee, and commencing with the ____ day of _____, 19 ____, the said hourly contribution shall be $_____ but not more than $_____ per week for any one employee.

For the purposes of this section, each hour for which wages are paid or due, or any portion thereof, figured to the nearest quarter hour, as well as hours of paid vacation, paid holidays and other hours for which pay is due or received by the employee, shall be counted as hours for which contributions are payable. In computing the maximum amount due any week, there shall be no daily limit on the number of hours for any one day in such week, whether such hours are performed on straight time or overtime rates, but payments shall be made at the amount set forth above.

If a regular employee (as defined in the collective bargaining agreement) is absent because of illness or off-the job injury and notifies the Employer of such absence, the Employer shall continue to make the required contributions for a period of four (4) weeks, for forty (40) hours per week. If an employee is injured on the job, the Employer shall continue to pay the required contributions at a rate of forty (40) hours for each such week until the employee returns to work; however, such contributions of forty (40) hours shall not be paid for a period of more than twelve (12) months.

(c) The Employer agrees to and has executed a copy of the New England Teamsters and Trucking Industry Pension Fund Agreement and Declaration of Trust originally dated April 11, 1958 and accepts such Agreement and Declaration of Trust, as restated and amended, and ratifies the selection of the Employer Trustees now or hereafter serving as such, and all action heretofore or hereafter taken by them within the scope of their authority under such Agreement and Declaration of Trust.

(d) The parties agree that the Pension Plan adopted by the Trustees of the New England Teamsters and Trucking Industry Pension Fund shall at all times conform to the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat its contributions made to the Fund as a deduction for income tax purposes.

(e) It is also agreed that all contributions shall be made at such time and in such manner as the Trustees shall reasonably require; and the Trustees shall have the authority to have an audit of the payroll and wage records of the Employer for all employees performing work within the scope and/or covered by this collective bargaining agreement for the purpose of determining the accuracy of contributions to the Pension Fund and adherence to the requirements of this section of the collective bargaining agreement regarding coverage and contributions. Such audit may, at the option of the Trustees, be conducted by an accountant employed by the New England Teamsters and Trucking Industry Pension Fund.

If the Employer shall fail to make contributions to the Pension Fund by the twentieth (20th) day of the month following the month during which the employees performed work or received pay or were due pay within the scope of this collective bargaining agreement, up to and including the last completed payroll period in the month for which contributions must be paid, or if the Employer, having been notified that its contributions to the Fund have been under-reported and/or underpaid, fails within twenty (20) days after such notification to make any required self-audit and/or contributions found to be due, the Local Union shall have the right after an appropriate 72-hour notice to the Employer, to take whatever steps it deems necessary to secure compliance with this agreement, any provision of this collective bargaining agreement to the contrary notwithstanding, and the Employer shall be responsible to the employees for losses resulting therefrom. Also, the Employer shall be liable to the Trustees for all costs of collecting the payments due together with attorneys' fees and such interest, liquidated damages or penalties which the Trustees may assess or establish at their discretion. The Employer's liability for payment hereunder shall not be subject to the grievance procedure and/or arbitration if such is provided in the collective bargaining agreement.

It is understood and agreed that once a payment or payments are referred to an attorney for collection by the Trustees of the New England Teamsters and Trucking Industry Pension Fund and/or the Local Union, the Local Union and its business agents or chief executive officer shall have no right to modify, reduce or forgive the Employer with respect to its liability for unpaid contributions, interest, liquidated damages or penalty as may be established or assessed by the Trustees in their discretion against delinquent Employers.

(f) No oral or written modification of this section regarding pensions and retirement shall be made by the Local Union or the Employer, and, if made, such modification shall not be binding upon the employees performing work within the scope of this collective bargaining agreement and covered by this section or upon the Trustees of the New England Teamsters and Trucking Industry Pension Fund.

## APPENDIX "A" cont.

2. The parties agree that this Standard Participation Agreement shall be considered a part of the collective bargaining agreement between the Local Union and the Employer, and that no other agreement between the Employer and Local Union regarding pensions or retirement is in effect or will be effective during the period covered by the collective bargaining agreement.

3. The expiration date of the present collective bargaining agreement between the Employer and the Local Union is _____, 19____. Copies of any renewal or extension agreements shall be furnished promptly to the Pension Fund, and if not consistent with the Standard Participation Agreement and/or Mandatory Contract Language or both as required by the Trustees, such non-conformity may be used by the Trustees as a basis for the termination of the participation of the Employer as a contributing employer to the Fund.

FOR THE LOCAL UNION:                                FOR THE EMPLOYER:

_____                           _____
Name & Number                                       Name of Employer

By: _____                            By: _____
                                                    Its duly authorized Agent

                                                    For: _____
                                                    (Location of Terminal)

PARTICIPATING UNIONS AND EMPLOYERS
ACCEPTANCE OF RESTATED AGREEMENT
AND DECLARATION OF TRUST

Whereas the Board of Trustees of the New England Teamsters and Trucking Industry Pension Fund have caused to be approved and executed a Restated Agreement and Declaration of Trust, effective as of _____, 19\_\_\_\_, the below signed Participating Union or Employer, as the case may be, having read said foregoing Restated Trust, does hereby approve and accept said Restated Trust and does acknowledge same by the execution of this Acceptance.

_____
(Name of Participating Union or Employer)

By: _____
(Authorized Officer and Title)

_____
(Street Address)

_____
(City, State, Zip Code)

_____
(Telephone Number)

_____
(Date)

## NEW EMPLOYER ACCEPTANCE OF
## RESTATED AGREEMENT AND DECLARATION OF TRUST

The undersigned Employer, having entered into a Collective Bargaining Agreement with Local No. _____, affiliated with the International Brotherhood of Teamsters, which provides among other things for contributions to and participation in the New England Teamsters and Trucking Industry Pension Fund, accepts and agrees to be bound by the Restated Agreement and Declaration of Trust thereof, and hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are named in said Agreement as Employer Trustees, together with their successors selected in the manner provided in the said Restated Agreement and Declaration of Trust.

Dated: _____    _____
                                                                                        (Name of Employer)

                                                                        By: _____
                                                                                     (Authorized Officer and Title)

                                                                        FOR TERMINAL LOCATED AT:

                                                                        _____

                                                                        _____